UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TINA BUSHEY,

                                Plaintiff,

v.                                                  8:13-CV-0777
                                                  (GTS)

Carolyn Colvin, Comm'r of Soc. Sec.,

                                Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER           MARK A. SCHNEIDER, ESQ.
  Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.            JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Tina Bushey ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 17, 21.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on May 10, 1982. She was in special education initially, but was in regular classes once she reached "higher grades." (T. 29.) Plaintiff completed her education through the eighth grade but did not obtain a General Equivalency Diploma. She has worked as a stock clerk in the produce department of a grocery store and has also worked for a jewelry packaging company. Generally, Plaintiff's alleged disability consists of degenerative disc disease, sciatica, nerve blockages in both legs, deficiency in vitamins B12 and D, bilateral hand pain, an autoimmune disorder, alopecia and joint pain in her hands and knees. Plaintiff's alleged disability onset date is June 16, 2010 and her date last insured is September 30, 2012.

### B. Procedural History

On January 10, 2011, Plaintiff applied for Social Security Disability Insurance. Plaintiff also applied for Supplemental Security Income on January 26, 2011. Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 5, 2012, Plaintiff appeared before the ALJ, Thomas Grabeel. (T. 25-38.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on April 18, 2012. (T. 8-24.) On June 14, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-5.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-20.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 13.) Second, the ALJ found that Plaintiff's

degenerative disc disease, scoliosis and cognitive disorder are severe impairments. (T. 13-14.)

Third, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the

listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14.) The ALJ

considered the 12.00 Listings. (*Id*.) Fourth, the ALJ found that Plaintiff has the residual

functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b).[1] (T. 14-19.) The ALJ further found that Plaintiff

> is able to perform the basic mental demands of work from which the
> vocational guidelines are predicated. [Plaintiff] has the ability to
> understand, carry out and remember simple and some slightly more
> detailed instructions and tasks. She can respond appropriately to
> others and usual work situations on a sustained basis, and deal with
> changes in a routine work setting. However, [Plaintiff] may have
> some difficulty consistently performing work of a skilled (or more
> complex) nature. Regardless, the overall light job base is not
> significantly reduced or eroded by the restriction of some semi-
> skilled tasks and higher skilled occupations.

(*Id*.) Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform. (T. 19-20.)

---

[1]

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ violated the treating physician rule by improperly weighing the opinions of various treating physicians and consultative examiners as well as Plaintiff's treating physician assistant. (Dkt. No. 17 at 12-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in concluding that Plaintiff has the RFC to perform work, despite her combination of limitations from her spinal disorder, pain, mental disabilities, side effects from medications and autoimmune disorder. (*Id.* at 19-25.) Third, Plaintiff argues that the ALJ erred when he rejected her credibility without clear and convincing evidence. (*Id.* at 25-29.) Fourth, and finally, Plaintiff argues that the ALJ erred when he failed to fully develop the record when he did not perform an IQ test on Plaintiff and when he failed to consider the records from Plaintiff's previous claim when deciding her current claim. (*Id.* at 29-39.)

### B.     Defendant's Arguments

In response, Defendant makes seven arguments. First, Defendant argues that the administrative record before the ALJ and before this Court properly excludes most of the documents from Plaintiff's prior claim for benefits because (1) the record in this case is complete in that it includes Plaintiff's medical records beginning one year prior to her application filing date; (2) Plaintiff is collaterally estopped from arguing that the December 24, 2009 opinion of physician assistant, Thomas Gavin, would be entitled to any weight; and (3) Plaintiff waived any inclusion of records from her prior claim other than those already included in the administrative record in this case. (Dkt. No. 21 at 5-11 [Def.'s Mem. of Law].) Second, Defendant argues that

the ALJ properly evaluated the opinions of Plaintiff's treating sources in determining her RFC. (*Id.* at 12-14.) Third, Defendant argues that the ALJ properly evaluated Plaintiff's mental impairments. (*Id.* at 15-16.) Fourth, Defendant argues that the ALJ was not required to test Plaintiff's IQ. (*Id.* at 16-17.) Fifth, Defendant argues that Plaintiff's impairments did not meet or equal Listing 1.04. (*Id.* at 17-18.) Sixth, Defendant argues that the ALJ properly assessed Plaintiff's credibility. (*Id.* at 18-20.) Seventh, and finally, Defendant argues that the ALJ properly evaluated Plaintiff's alopecia. (*Id.* at 21.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

activities.  If the claimant suffers such an impairment, the third inquiry is
whether, based solely on medical evidence, the claimant has an
impairment which is listed in Appendix 1 of the regulations.  If the
claimant has such an impairment, the [Commissioner] will consider him
disabled without considering vocational factors such as age, education,
and work experience; the [Commissioner] presumes that a claimant who is
afflicted with a "listed" impairment is unable to perform substantial
gainful activity.  Assuming the claimant does not have a listed
impairment, the fourth inquiry is whether, despite the claimant's severe
impairment, he has the residual functional capacity to perform his past
work.  Finally, if the claimant is unable to perform his past work, the
[Commissioner] then determines whether there is other work which the
claimant could perform.  Under the cases previously discussed, the
claimant bears the burden of the proof as to the first four steps, while the
[Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.     ANALYSIS

### A.     Whether the Record Before the ALJ and This Court Is Complete

After carefully considering the matter, the Court answers this question in the affirmative,

in part for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 21 at 5-10 [Def.'s

Mem. of Law].)  The Court would only add the following analysis.

Plaintiff argues, in a somewhat disjointed manner, that the ALJ failed to fully develop the

record in this case, in part because he failed to consider the entire record that was before the

court in Plaintiff's previous claim.  *See Bushey v. Colvin*, No. 8:11-CV-0031 (N.D.N.Y. Mar. 29,

2013) (*aff'd*, 522 F. App'x 97 (2d Cir. 2014)).  Instead, Plaintiff argues, the ALJ "cherry picked"

two of the consultative examination reports from the prior record to consider in making his

determination in this case, rather than considering other, more favorable evidence from the prior

record.  (Dkt. No. 17 at 33 [Pl.'s Mem. of Law].)  In opposition to Plaintiff's argument,

Defendant asserts, among other things, that the ALJ here had the duty to develop Plaintiff's

complete medical history beginning on January 1, 2010, which is twelve months prior to

Plaintiff's application date. Defendant also notes that the Court of Appeals for the Second

Circuit held, as did Magistrate Judge Treece in the first instance, that the ALJ gave good reasons

for determining that the December 2009 opinion of Plaintiff's treating physician assistant,

Thomas Gavin, was unsupported by the medical record and therefore, the ALJ properly assessed

the weight given to that opinion. Accordingly, Defendant argues, Plaintiff is collaterally

estopped from relitigating that issue, and therefore, the ALJ and this Court need not include Mr.

Gavin's December 2009 opinion in the record in this case.

To be sure, the ALJ has an affirmative duty to develop the record. *See Moran v. Astrue*,

569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social

security ALJ... must on behalf of all claimants ... affirmatively develop the record...." (quoting

*Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir.2009)) (internal quotation

omitted)). By statute, an ALJ is bound to develop a claimant's complete medical history for

at least twelve months prior to the filing of an application for benefits, "but also to gather such

information for a longer period if there [is] reason to believe that the information [is] necessary

to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir.1998) (citing 42

U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. §

416.912(d)). However, the affirmative obligation to develop an administrative record does not

extend to infinity and is not without limit. *See Guile v. Barnhart*, No. 07-CV-259, 2010 WL

2516586, at *3 (N.D.N.Y. June 14, 2010). Reviewing courts have held that ALJs are not

required to seek additional information absent "obvious gaps" that preclude an informed

decision. *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir.1999); *see also Hart v. Comm'r of Soc.

Sec.*, No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).

As noted by Defendant, the Commissioner's denial of Plaintiff's prior application for benefits was affirmed on the merits by Magistrate Judge Treece. *See Bushey*, No. 8:11-CV-0031 (N.D.N.Y. Mar. 29, 2013). During the pendency of Plaintiff's appeal in this action, the Court of Appeals affirmed Magistrate Judge Treece's decision. *See Bushey v. Colvin*, 522 F. App'x 97 (2d Cir. 2014). Consequently, Plaintiff is barred from relitigating the issue of whether she is disabled between October 15, 2007, the date of her prior application for benefits, and ending June 15, 2010, the date the Commissioner issued an unfavorable decision in that action. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).

Here, the record before the ALJ and this Court includes, among others, Plaintiff's medical records from the prior administrative record dating back to January 2010, which is twelve months prior to Plaintiff's current application for benefits. Therefore, the Court concludes, the ALJ did not err in considering Plaintiff's medical evidence beyond the twelve-month period prior to her current application filing date, given that the record, as it presently exists, includes medical evidence from the period of time during which Plaintiff has been adjudicated to be not disabled under the Social Security Act.

**B.     Whether the ALJ Erred at Step Three of the Sequential Evaluation**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 17-18, 21 [Def.'s Mem. of Law].) The Court would only add the following analysis.

At step two of the sequential analysis, the ALJ found that Plaintiff's degenerative disc disease is a severe impairment, but that her autoimmune disorder, including fibromyalgia and nerve blockages, which are not identified within the record as medically determinable impairments, and her alopecia, which does not interfere with work related functions, are not severe impairments. (T. 13-14.)

Plaintiff argues that she meets the limitations of Listing 1.04A, which provides the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Specifically, Plaintiff argues, without citation to the record, that she has the following evidence of nerve root compression: radiculopathy, limitation of motion, sensory or reflex loss, and a positive straight-leg test. (*See* Dkt. No. 17 at 21 [Pl.'s Mem. of Law].) To be sure, an August 5, 2010 electromyography and nerve conduction report completed by Dr. Honorio T. Dispo, M.D., reflects that Plaintiff has radiculopathy. (T. 294.) However, a March 30, 2011 report by consultative examiner, David G. Welch, M.D., reports a negative straight leg raising test with no motor or sensory loss. (T. 241.) An August 31, 2011 examination note by treating neurologist, Ellen C. Gaughan, M.D. reflects no motor or sensory loss. Accordingly, the record does not support a conclusion that Plaintiff meets Listing 1.04A, nor, based on the Court's review of the record, does Plaintiff meet the limitations of Listing 1.04B or C. Therefore, the ALJ did not err in finding that Plaintiff's degenerative disc disease does not meet or equal a Listing.

Plaintiff also argues, again without citation to the record, that the objective laboratory tests indicate that she is suffering from an autoimmune disorder, of which her hair loss and joint pain are symptoms. Plaintiff notes that Listing 14.00 covers immune system disorders and concludes that, even if her autoimmune disorder does not meet the Listing, it, in combination with her other impairments, prevents her from working.

The Court's review of the record reveals that a September 5, 2012 examination note by James M. Trice, M.D., reflects that Plaintiff had no pain or swelling in her joints, but there was mild discomfort on palpation of her sacroiliac joints. (T. 397.) Subsequent imaging of Plaintiff's sacroiliac joints revealed no erosions or abnormality. (T. 393.) Plaintiff was thereafter diagnosed with "[m]ultiple joint pain without any evidence of inflammatory synovitis." (T. 398.) Dr. Trice went on to explain that "The etiology of [Plaintiff's] complaints is not yet defined. Metabolic causes for joint pain such as B12 deficiency, hypothyroidism and hemochromatosis are raised. Autoimmune causes for her joint pain would be less likely given the scenario[.]" (*Id*.) Accordingly, the ALJ did not err in his conclusion that Plaintiff's autoimmune disorder is not identified within the record as a medically determinable impairment.

For these reasons, the ALJ's determination at step three of the sequential evaluation that Plaintiff's impairments do not meet or equal a Listing is supported by substantial evidence and is therefore, affirmed.

### C. Whether the ALJ Properly Considered Plaintiff's Mental Impairments

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at15-17 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ failed to correctly identify her mental limitations when presenting his hypothetical to the vocational expert and that this was error because there is not substantial evidence that a person with Plaintiff's mental impairments and limitations could perform any work on a full time, sustained basis. Plaintiff further argues that it was error for the ALJ to fail to obtain an IQ test before rendering his determination. (*See* Dkt. No. 17 at 18, 22-

24, 29-30.) Defendant counters, correctly, that Plaintiff's arguments were taken verbatim from her brief that was submitted the Court of Appeals for the Second Circuit, who affirmed the ALJ's determination that Plaintiff's prior claim for benefits was appropriately denied.

To the extent Plaintiff argues that the ALJ in this case erred by not presenting her mental limitation to the vocational expert, the Court notes that there was no vocational expert testimony presented in the hearing in this action.[2] Also, Plaintiff's broad argument that substantial evidence does not support the conclusion that Plaintiff's mental impairments and limitations do not prevent her from working as well as her argument that the ALJ should have obtained an evaluation of Plaintiff's IQ before rendering his decision are without basis for the following two reasons.

First, Plaintiff relies on evidence that is not included in the record before this Court and is outside the relevant period of consideration, as indicated in Point IV.A. of this Decision and Order. Consequently, the Court need not, and will not, address that evidence.

Second, the Court notes that the evidence in the record supports the ALJ's conclusion that Plaintiff's learning disorder is a severe impairment, but that it does not interfere with her ability to perform the basic mental demands of work from which the medical-vocational guidelines are based. (T. 18.)

---

[2]     It is worth mentioning that the ALJ presiding over Plaintiff's appeal of her prior claim for benefits did obtain vocational expert testimony. From the Court's review of Plaintiff's submissions, it appears that her argument in this regard, along with the majority of Plaintiff's arguments presented in her memorandum of law in this case, are taken verbatim from arguments presented to Magistrate Judge Treece and the Court of Appeals for the Second Circuit regarding the denial of her prior claim for benefits.

The only evidence in the record regarding Plaintiff's mental impairments and limitations are the February 23, 2010 and March 30, 2011 reports of consultative examiner, physiatrist[3] David Welch, M.D., the April 9, 2010 opinion of consultative examiner, psychologist Alan Dubro, Ph.D., and the April 12, 2011 Mental RFC completed by non examining State Agency psychiatric consultant, Dr. J. Alpert, M.D. (T. 174-182, 183-191, 240-242, 257-260.) In each of his evaluations of Plaintiff, Dr. Welch noted that she has a significant learning disability and recommended that she be further evaluated in that regard. (T. 174-182, 240-242.) Plaintiff was evaluated by Dr. Dubro, who noted that her attention and concentration and recent and remote memory skills are mildly impaired and that her cognitive functioning is estimated to be in the below average range, but that she can follow and understand simple directions and instructions and that she is able to complete daily tasks independently, relate adequately with others, make appropriate decisions and regularly attend to a routine and maintaining a schedule. (T. 185.) Dr. Dubro concluded that the results of his examination of Plaintiff are not consistent with any psychiatric or learning problems that significantly interfere with her ability to function on a daily basis. (T. 186.) Dr. Alpert concluded, based on the examination reports of Dr. Dubro and Dr. Welch as well as Plaintiff's reports of limitations and daily activities, that Plaintiff is moderately limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions but that she retains the mental RFC to carry out work procedures with a consistent pace, interact adequately with coworkers and supervisors, adapt to changes and handle stress in the workplace. (T. 257, 259.)

---

[3]     A physiatrist is board certified in physical medicine and rehabilitation.

The record contains no opinion of a treating source regarding Plaintiff's mental impairments. However, it is important to note that, at her April 5, 2012 hearing, Plaintiff testified that her impairments were physical and that she was not receiving any kind of mental health treatment. (T. 30-32.)

The ALJ considered each of the opinions and evaluations of record in reaching his determination regarding Plaintiff's RFC. (T. 17-18.) Moreover, the ALJ specifically addressed the issue of the necessity of an IQ test, stating that the thorough assessments of Drs. Dubro and Alpert support "a finding that an IQ test is not necessary as [Plaintiff] has clearly functioned in a manner than is incongruent with someone who is mental[ly] retarded." (T. 18.)

Accordingly, because the ALJ adequately explained his reasoning in reaching his determination of Plaintiff's mental RFC, and because that determination is supported by substantial evidence, Plaintiff's allegation that the ALJ committed error in that regard is without legal or factual basis. Therefore, the ALJ's determination regarding Plaintiff's mental RFC is affirmed.

**D.    Whether the ALJ Erred in Weighing the Medical Opinions of Record**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 12-14 [Def.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in weighing the opinions of consultative examiner, Dr. Welch, treating physicians, Drs. Gaughan and Joseph Arguelles, M.D., and treating physician assistant Thomas Gavin. (*See* Dkt. No. 17 at 13-15, 17 [Pl.'s Mem. of Law].)

To the extent Plaintiff challenges the weight assigned to the opinion of Dr. Welch regarding her learning disability or the need for an IQ test, as indicated in Point IV.C. of this Decision and Order, the Court concludes that the ALJ's determination in this regard is supported by substantial evidence.

Moreover, for the reasons indicated in Point IV.A. of this Decision and Order, the Court need not, and will not, address any evidence relied on by Plaintiff that precedes the relevant period of consideration for her current claim. Similarly, Plaintiff's argument that the ALJ erred in weighing the opinion of her treating physician assistant that she is unable to work because of her orthopedic impairments is not addressed here because that opinion was rendered before the relevant period of consideration. In addition, Plaintiff is collaterally estopped from relitigating the issue of the weight that should be assigned to the opinion of Mr. Gavin for the reasons indicated in Point IV.A. of this Decision and Order. (*See Bushey*, 522 F. App'x at 97-98 [rejecting Plaintiff's argument that the ALJ violated the treating source rule when he refused to give controlling weight to the opinion of treating physician assistant, Thomas Gavin]. )

The ALJ assigned great weight to the opinion of consultative examiner, Dr. Welch, and, while he discussed the treatment notes of treating neurologist, Dr. Gaughan, the ALJ did not assign any weight to those notes.

First, it is important to note that the ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v.*

*Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Here, the ALJ correctly noted that the only medical source opinion in the record regarding Plaintiff's physical limitations is that of consultative examiner, Dr. Welch. (T. 17.) Notably, the only part of Dr. Welch's opinion that Plaintiff challenges is his interpretation of the November 2009 MRI to reflect "some relatively mild changes in the form of annular bulge at the L4-5 level with mild narrowing of the canal at that level." (*See* Dkt. No. 17 at 14 [Pl.'s Mem. of Law] [quoting T. 174.].)[4] However, as the ALJ noted, Dr. Welch opined that Plaintiff does have symptomatic degenerative disc disease at the L4-L5 level, but found the rest of the findings from his examination to be relatively benign. (T. 17, 242.) The ALJ further noted that Dr. Welch's opinion did not waiver between his February 2010 and March 2011 examinations. (T. 17, 174-182, 240-42.) Specifically, the ALJ noted that Dr. Welch continued to opine that Plaintiff was capable of lifting up to 15 or 20 pounds. Moreover, the ALJ noted that in his March 2011 opinion, Dr. Welch further opined that Plaintiff had no significant neurological deficits. (T. 17, 242.) Finally, and importantly, the ALJ noted that Dr. Welch's opinion is not contradicted by the documented medical record. For these reasons, the ALJ explained, he assigned great weight to the opinion of Dr. Welch.

To be sure, the record contains treatment notes of Plaintiff's treating neurologist, Dr. Gaughan, for the period May 2011 through January 2012. The ALJ clearly considered the treatment notes, correctly noting that Dr. Gaughan repeatedly recorded normal to minimal

---

[4] It is important to note that Plaintiff cites Dr. Arguelles' treatment notes interpreting Plaintiff's November 2009 MRI results to challenge Dr. Welch's interpretation of the same MRI. However, those notes are not contained in the record that were before the ALJ in this case or that are currently before this Court. Consequently, the ALJ did not assign any weight to an opinion of Dr. Arguelles, and therefore, to the extent Plaintiff appears to argue that the ALJ erred by failing to discuss Dr. Arguelles' opinion or his treatment notes, such argument is without merit.

findings on examination and that there was no evidence of restrictions to Plaintiff's functioning, including the use of any ambulatory device. (T. 16-17, 272-287, 297-323.) Because the record contains no opinion from Dr. Gaughan regarding Plaintiff's limitations, the ALJ did not assign any weight to Dr. Gaughan's treatment notes. Moreover, because Dr. Gaughan's treatment notes did not create an ambiguity or identify any gaps in the record, the ALJ was not required to seek a medical source statement from her.

Accordingly, the ALJ's decision assigning controlling weight to the opinion of Dr. Welch is supported by substantial evidence and is affirmed.

### E.      Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 18-20 [Def.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Plaintiff argues that the ALJ failed to consider Plaintiff's allegations of pain and side effects from pain medication and that the ALJ erred in discrediting Plaintiff because she testified that she suffers from an autoimmune disorder and that the needs to use a prescribed cane every day. Plaintiff further argues, without citation to the record, that the objective medical evidence supports her allegations.

Defendant counters that the ALJ did consider Plaintiff's allegations of significant pain and other subjective complaints but that he properly found that Plaintiff's allegations were inconsistent with her own testimony and other statements as well as the objective medical evidence.

Here, the ALJ considered Plaintiff's allegations regarding her impairments and related symptoms during the application process and at her hearing, and noted that only some of her reports coincide to medically determinable impairments and that these impairments are reasonably expected to cause only some of the alleged symptoms. Therefore, the ALJ concluded, there is a lack of credibility on Plaintiff's part. (T. 15.) Specifically, the ALJ noted that the record supports medically determinable impairments of a lifelong scoliosis, disc degeneration and central disc herniation with bilateral stenosis, and some right L5 radiculopathy. (T. 16.) However, the ALJ noted, Plaintiff's allegations of pain and mobility limitations are not supported by the March 2011 findings of Dr. Welch that her scoliosis is asymptomatic and that she demonstrated an ability to walk without use of her cane and has no significant limp as she walks. (T. 16, 241.) Further, the ALJ considered that Dr. Gaughan continually noted in her treatment records that Plaintiff's gait is normal and that her motor and sensory exam results were normal. Also, more recently, Dr. Gaughan reported that Plaintiff's pain seems to be under control with medication. (T. 16, 297-323.)

Regarding Plaintiff's allegations of an autoimmune disorder, which causes her hair loss and joint pain, as indicated in Point IV.B. of this Decision and Order, the ALJ's conclusion that Plaintiff's autoimmune disorder is not identified within the record as a medically determinable impairment is supported by substantial evidence. Accordingly, it was not error for the ALJ to find Plaintiff less than credible based on her allegation of an impairment that is not medically determinable. Similarly, Plaintiff's hearing testimony that she uses a cane all the time and her counsel's testimony that the cane is prescribed were not borne out by the medical evidence, including the examination report of Dr. Welch and the treatment notes of Dr. Gaughan. (T. 28, 32.)

For all of these reasons, the ALJ's determination that Plaintiff is less than credible is supported by substantial evidence and is affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 21) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: September 30, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge